UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONI R. FLYNN,

        Plaintiff,

        v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.

Civil No. 05-6167-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

        Plaintiff Toni R. Flynn brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act (the Act). She seeks judicial review of a final decision by defendant Commissioner of Social Security (Commissioner) denying plaintiff's application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments. For the reasons provided below, the Commissioner's decision is affirmed.

**ADMINISTRATIVE HISTORY**

        Plaintiff applied for DIB on April 9, 2002, alleging disability as of March 29, 2002. Administrative Record 55-58, 69 (subsequent references to the Administrative Record will be

PAGE 1 – OPINION AND ORDER

designated by "AR" followed by the page number). Plaintiff applied for SSI Benefits on August 2, 2002. AR 6. After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 41-51. On November 24, 2004, the ALJ issued a decision finding that plaintiff was disabled due to a listing level knee impairment. Plaintiff's disability onset date was determined to be December 17, 2003. AR 17-26. Plaintiff asserts that the correct onset date should be March 29, 2002. AR 69.

On April 14, 2005, the Appeals Council denied plaintiff's request for review. AR 7-9. Accordingly, the ALJ's decision is construed as the Commissioner's final decision, and plaintiff now seeks judicial review of that final decision. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. This review pertains to plaintiff's alleged disability between March 29, 2002 and December 16, 2003.

**BACKGROUND**

The relevant background has been presented thoroughly by the parties and the ALJ and will be merely summarized here. Plaintiff was forty-four years old at the time of the ALJ's decision. AR 23, 56. She earned a high school general equivalency degree. AR 75. Her work history includes positions as an espresso shop manager, receptionist, sales assistant, barista, bank teller, cashier, and wire operator. She last worked at the end of March 2002. AR 108, 499.

Plaintiff has a history of depression, panic symptoms, and brief hospitalizations for psychological issues. AR 478-483. Plaintiff also suffers from fibromyalgia and a history of medical inflictions related to deQuervain's disease, tendinitis, patellofemoral misalignment, and irritable bowel syndrome. AR 19.

In January 2002, plaintiff consulted Dr. Timothy Hill, a physical medicine and rehabilitation doctor, to discuss on-going neck and upper extremity pains. AR 203. Doctor Hill noted that on a fibromyalgia exam, plaintiff was positive for more than eleven out of eighteen tender points. AR. 206. Doctor Hill assessed plaintiff with fibromyalgia, chronic cervical/upper extremity pain, chronic low-dose opiate use with no evidence of addictive disease, and chondromalacia patella. *Id.* Doctor Hill recommended regular aerobic conditioning and physical therapy. *Id.*

After a March 2002 consultation, Dr. Hill reiterated his earlier recommendations, suggested that plaintiff consult a psychologist for pain management strategies, and encouraged plaintiff to continue with her reduced work schedule and to seek sedentary, non-repetitive work. AR 201-202. At the end of March, plaintiff began consulting with the Vocational Rehabilitation Division (VRD) in order to find more suitable work. AR 154-155.

In April 2002, Dr. Hill competed a fibromyalgia evaluation form. He estimated that if plaintiff were placed in a competitive work situation, she would be limited to sedentary work. AR 199. She would "quite possibly" need to lie down at unpredictable intervals during the work day. AR 200. Frequent flare-ups would likely result in approximately ten percent of missed work days. *Id.* Relatedly, Doctor Hill also noted that plaintiff was unable presently to sustain an eight-hour work day. *Id.*

In May 2004, Dr. William Maier, a treating rheumatologist, agreed with Dr. Hill's assessment that plaintiff would miss many work days, and that she was limited in her ability to use her hands to grasp, turn, or twist objects. AR 432.

In May 2002, Dr. Hill noted that it was still unclear whether plaintiff "can tolerate a full work day." AR 195. However, in June 2002, Dr. Hill noted that a full work day should be "feasible in the long run." AR 193. He also recommended that plaintiff try a volunteer job. AR 190.

At the hearing before the ALJ, plaintiff testified to her pain and inability to work prior to December 17, 2003. AR 499-539. Her husband, Dale Flynn (Flynn), also testified that plaintiff could not sit or stand for very long and cried frequently. AR 540. Additionally, Flynn submitted a written statement describing plaintiff's physical condition in 2002. AR 96-103.

## **STANDARDS**

A person may be eligible for DIB or SSI if he or she has insured status under the Act and suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). A claimant is considered disabled for purposes of receiving DIB or SSI benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). A person can be disabled for these purposes only if his or her impairment is of such severity that the person is not only unable to perform previous work but cannot, considering the person's age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB or SSI payments. 20 C.F.R. §§ 404.1520, 416.920;

*Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).

First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, disability benefits are denied. If not, the Commissioner proceeds to Step Two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant's impairment does not qualify as severe, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner acknowledges to be so severe they are presumed to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her residual functional capacity (RFC), age,

education, and work experience. The claimant is entitled to disability benefits if he or she is not able to perform any other work. 20 C.F.R. § 404.1520(f).

The claimant bears the burden of proving his or her disability as to the first four steps. At Step Five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for the purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1).

The Commissioner has an affirmative duty to develop the record. 20 C.F.R. § 404.1512(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The proceedings are not adversarial and the Commissioner shares the burden of proof at all stages. *Id.*; *Tackett*, 180 F.3d at 1098 n.3.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097. Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The

Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## **FINDINGS**

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 25. At Step Two, the ALJ found that the following combined physical impairments were considered "severe" according to Agency regulations: fibromyalgia; history of deQuervain's stenosing tenosynovitis at the right wrist, status post surgical release; history of left rotator cuff tendinitis; hypothyroid; patellofemoral misalignment, status post remote corrective history; and history of irritable bowel syndrome. *Id.*; 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the ALJ found that plaintiff's impairments met the criteria in section 1.02 of the Listing of Impairments, but only after December 17, 2003. AR 25. The ALJ determined that before December 17, 2003 plaintiff had an RFC to lift and carry five pounds rarely with an occasional ten-pound maximum. *Id.* The ALJ also found that plaintiff had a limited capacity to reach overhead; was limited to minimal repetitive upper extremity activity; needed to minimize twisting and bending; and needed an opportunity to sit or stand as needed. *Id.* At Step Four, the ALJ determined that plaintiff was unable to perform any of her past relevant work. *Id.* At Step Five, the ALJ determined that before December 17, 2003, plaintiff had the RFC to perform a significant range of sedentary work, including work as a food and beverage order clerk, a surveillance systems monitor, or an information clerk. AR 26. The ALJ concluded that plaintiff was not entitled to DIB or SSI before December 17, 2003. *Id.*

**QUESTIONS PRESENTED**

Plaintiff asserts that the ALJ erred in: (1) rejecting plaintiff's testimony; (2) concluding that plaintiff did not suffer from a severe mental impairment; (3) failing to properly consider the medical opinions of Dr. Hill and Dr. Maier; and (4) failing to properly consider lay witness testimony.

**DISCUSSION**

First, plaintiff claims that the ALJ erred by not completely accepting plaintiff's testimony as to her subjective pain prior to December 17, 2003. The ALJ decided that plaintiff's testimony regarding the time period at issue was not entirely credible because it was inconsistent with medical evidence and because it was contradicted by her conduct. AR 22.

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citation and quotation omitted).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom; that is, the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof. *Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Bunnell*, 947 F.2d at 347-48).

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (citations and quotations omitted).

PAGE 9 – OPINION AND ORDER

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. In determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id.* (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id.* at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In this case, plaintiff produced some objective medical evidence of her underlying impairments and the record contains no evidence of malingering. Accordingly, the ALJ was required to make specific findings stating clear and convincing reasons for rejecting plaintiff's symptom testimony. This court concludes that the ALJ did so.

PAGE 10 – OPINION AND ORDER

The ALJ concluded from Dr. Hill's medical reports that although plaintiff had experienced a flare-up of her symptoms in 2002, she had improved within a few months. AR 22. In May 2002, Dr. Hill reported that plaintiff was sleeping better. AR 194. In June, he reported that plaintiff feasibly could to return to full-time work in "the long run." AR 193.

The ALJ also found that plaintiff's participation with the VRD contradicted her testimony that she was unable to work before December 17, 2003. AR 22. The ALJ noted that her participation with the VRD "indicat[ed] that [she] did not consider herself totally disabled." *Id.* Such contradictions between a plaintiff's conduct and testimony can provide sufficient grounds for construing that plaintiff's testimony as less than fully credible. *See Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir.1999) (finding contradiction between plaintiff's daily activities and testimony sufficient reason to reject plaintiff's testimony).

These reasons for the ALJ's credibility determination – evidence of inconsistency and contradiction in the record – were clear and convincing. The finding that plaintiff's testimony regarding her subjective pain before December 17, 2003 was not worthy of complete acceptance is, therefore, affirmed.

Plaintiff's second challenge questions whether the ALJ was correct in determining that plaintiff did not have a severe mental impairment. An impairment is severe if it significantly limits plaintiff's ability to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). An impairment is not severe if it has "no more than a minimal effect" on the ability to do basic work activities. *See* Social Security Ruling 96-3P. A plaintiff bears the burden of showing that his or her impairments are severe. *See Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

PAGE 11 – OPINION AND ORDER

Here, plaintiff has not met that burden for the period at issue. Plaintiff was seeing a psychologist in 2002, primarily for pain management. AR 265. Plaintiff's prescribed antidepressant medication was intended, in part, for pain and energy. AR 187.

In April 2002, Dr. Hill noted that plaintiff appeared "down." AR 196. By itself, this observation does not qualify as a severe impairment. In May 2002, plaintiff reported moodiness and irritability due to menopausal symptoms. AR 279. Plaintiff fails to show how these impairments had more than a minimal effect on her ability to do basic work functions. Accordingly, the ALJ was correct in determining that plaintiff's mental impairment was not severe.

Plaintiff's third challenge questions whether the ALJ considered the medical opinions of Dr. Hill and Dr. Maier properly. Specifically, plaintiff argues that the ALJ did not fully and completely credit Dr. Hill's medical opinions from 2002. This court has examined the record and considered plaintiff's arguments and concludes that the ALJ's decision in fact incorporates much of Dr. Hill's assessments of plaintiff's condition. AR 20-25. The ALJ's decision was consistent with Dr. Hill's determination that plaintiff, for a short period, was unable to sustain an eight-hour workday. AR 22. Also consistent with Dr. Hill's reports, the ALJ found that plaintiff was limited to lifting and carrying more than five pounds rarely, with an occasional ten-pound maximum; that plaintiff had a limited capacity to reach overhead; that plaintiff needed an opportunity to sit or stand as needed; and that plaintiff was limited to minimal repetitive upper-extremity activity. AR 25.

Doctor Hill's concerns regarding plaintiff's ability to sustain a full workday in 2002 fluctuated. In April 2002, Dr. Hill estimated that plaintiff was limited to sedentary work only

PAGE 12 – OPINION AND ORDER

and was unable to handle a full workday.  By June 2002, however, he predicted that plaintiff's tolerance for a full workday should be feasible.  This court concludes that the ALJ considered all aspects of Dr. Hill's medical opinions properly.

Similarly, the ALJ considered the medical opinion of Dr. Maier, the treating rheumatologist, properly.  In 2004, Dr. Maier agreed with Dr. Hill's 2002 assessment that plaintiff would miss a high percentage of workdays, and that she was limited in her ability to use her hands to grasp, turn, or twist objects.  AR 432.  Plaintiff asserts that the ALJ should have noted Dr. Maier's comments.  The ALJ considered and cited the exhibit that evinces Dr. Maier's agreement with Dr. Hill's 2002 assessments.  AR 21 (citing exhibit 28F at AR 432).  Plaintiff's arguments in this regard are overruled.

Finally, plaintiff contends that the ALJ failed to evaluate the testimony of plaintiff's husband, Dale Fynn, adequately.  Flynn testified that plaintiff could not sit or stand for long, and cried several times per week.  AR 540.  Flynn also submitted a written statement describing plaintiff's condition in 2002.  AR 96-103.  The ALJ discounted Flynn's written statements on sufficient grounds:  they were prepared during a period in which plaintiff's condition was exacerbated, and, in light of the medical evidence, were not indicative of her overall condition.  AR 22.

The ALJ's decision did not address Flynn's testimony at the hearing.  AR 22.  Generally, the ALJ must supply germane reasons for rejecting lay witness testimony.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  However, the requirement that a rejection of evidence be supported by detailed findings applies only to evidence that is significant and probative.  *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  In this case, Flynn's

PAGE 13 – OPINION AND ORDER

testimony at the hearing failed to add any significant or probative evidence. Accordingly, the decision's failure to address Flynn's lay testimony does not compel reversal. *Id*.

**CONCLUSION**

For the foregoing reasons, the findings of the Commissioner are based upon correct legal standards and are supported by substantial evidence in the record. Accordingly, the ALJ's denial of plaintiff's claim for disability prior to December 17, 2003 is AFFIRMED.

IT IS SO ORDERED.

DATED this 21st day of July, 2006.

                                                    /s/Ancer L. Haggerty
                                                        ANCER L. HAGGERTY
                                                    United States District Judge